Judgment Rendered May 25, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,400- KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Plaintiff-Appellee

versus

ROBERT O'NEAL GIBSON                        Defendant-Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2019-378F

Honorable Daniel Ellender, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Holli Ann Herrle-Castillo

ROBERT S. TEW                        Counsel for Appellee
District Attorney

JOHN G. SPIRES
Assistant District Attorney

* * * * *

Before COX, STEPHENS, and MARCOTTE, JJ.

**MARCOTTE, J.**

The defendant, Robert O'Neal Gibson, was convicted of one count of aggravated battery, in violation of La. R.S. 14:34, and one count of aggravated flight from an officer, in violation of La. R.S. 14:108.1(C). He was subsequently sentenced to 10 years at hard labor on each count, with credit for time served. His sentences were ordered to run concurrently to each other and consecutively to any other sentence. He appeals as excessive his concurrent sentences for each offense. For the following reasons, we affirm his convictions and sentences.

### Facts and Procedural Background

In May 2019, an arrest warrant was issued for Gibson for simple burglary and conspiracy to commit simple burglary; both crimes were committed on May 27, 2019. He was accused of helping another man break into a motel room at the Preferred Inn in Bastrop, Louisiana, and steal two televisions. Video surveillance captured Gibson's co-assailant strike the window to the motel room in order to enter the room, while Gibson stood by the door acting as lookout. The video surveillance then shows the pair enter the motel room, and a short time later, Gibson exited the room with two flat-screen TVs.

On May 31, 2019, the Bastrop police received a Crime Stoppers tip that Gibson was at Kraftman Federal Credit Union in a stolen vehicle in a long line of cars at the ATM. Several police officers, including Officer Jeffery Dowdy, went to the scene. Officers pulled up on each side of Gibson's vehicle and an officer attempted to block an exit from the parking lot. Gibson was ordered to turn the vehicle off and raise his hands. Gibson

placed his vehicle in reverse, accelerated, and struck the vehicle in line behind him.

Officer Dowdy reached into the driver's side of Gibson's vehicle in an attempt to turn the engine off. Gibson then turned the wheel sharply, causing the vehicle to spin. Officer Dowdy was dragged for a short distance and then the vehicle ran over his foot. The officer was treated at a hospital and released. The foot was not broken.

Gibson struck another vehicle in his escape from the credit union, and then fled the scene in the vehicle, leading officers on a high-speed chase in which he ran several stop signs and traveled at a speed in excess of 50 miles over the posted speed limit. Gibson abandoned the vehicle on a dead-end street and fled on foot. Gibson was found hiding in an apartment near the area where he abandoned the vehicle, and he was arrested.

On July 9, 2019, Gibson was charged by bill of information with one count of aggravated battery, one count of aggravated flight from an officer, and one count of hit and run. He was charged that same date in a separate bill of information with one count of simple burglary and one count of conspiracy to commit simple burglary in connection with the motel burglary.

On January 7, 2021, Gibson entered a plea of guilty to aggravated battery and aggravated flight from an officer. The state read a factual basis for Gibson's plea into the record, which Gibson affirmed, and the trial court found that there was an adequate factual basis for accepting Gibson's guilty plea to aggravated battery and aggravated flight from an officer. No sentence was agreed upon.

In exchange for the plea, the hit and run charge was dismissed, as well as the charges arising from the motel burglary. The state agreed not to

2

charge Gibson as a habitual offender. Gibson stated that he was 37 years old and had been in jail for two years on the charges to which he pled guilty. He also provided some work history.

Gibson acknowledged that he read, understood, and signed a waiver of rights form provided by the state. The trial court properly informed Gibson of the rights waived by the guilty plea including the right to trial, the right of confrontation, and the right against compulsory self-incrimination. Gibson was informed of the maximum sentence for each count. The trial court ordered a presentence investigation ("PSI") report. The trial court informed Gibson that it did not know what his sentences would be until it viewed the PSI report, and that his sentence could be the maximum sentence. Gibson affirmed that he still intended to plead guilty. The trial court found Gibson's plea to be knowingly and intelligently entered.

Gibson appeared before the court for sentencing on April 20, 2021. Defense counsel stated that Gibson was not a violent person and that he felt "a bit fearful" at the time he was apprehended. Gibson addressed the court and stated that "I wasn't trying to hurt nobody. I was scared." The court stated that the defendant was born on July 10, 1983, and he and his younger siblings were raised primarily by their mother, but did have contact with their father, who passed away in 2008. His father worked at Conagra and his mother worked doing odd jobs at a nursing home.

Gibson dropped out of school in the tenth grade and started to "run the streets." He was suspended for fighting. He had average grades and played basketball and football in school, and started working at the age of 17 for a farmer. He started drinking at 15, using marijuana at 16, using ecstasy at 17, using cocaine at 19, and at the age of 30 he began using methamphetamines.

Gibson moved to Dallas, Texas, in 2007, after being released from incarceration. While there, he worked in a restaurant. He moved back to Louisiana in 2009 and worked at DG Foods in Bastrop. He was single with two children, ages 10 and 20, with whom he is in contact and helped raise. Gibson attended abuse treatment at Blue Walters in 2017. Gibson attended church with his grandmother, but did not regularly do so as he got older.

The trial court observed that the present offense was Gibson's sixth felony. In 2001, he was convicted of simple burglary and sentenced to six years, suspended. In 2002, he was convicted of simple burglary and theft and sentenced to serve three years at hard labor for each offense. In 2008, Gibson was convicted of unauthorized entry of a place of business and was sentenced to four years, suspended. In 2009, he was convicted of illegal possession of stolen things and possession of a firearm by a convicted felon. A charge of distribution of marijuana was dismissed. Gibson was sentenced to serve ten years at hard labor. In 2014, he was convicted of simple burglary and simple burglary of an inhabited dwelling. He was sentenced to serve 12 years at hard labor for each of those offenses. The court observed that, at that time, Gibson was facing five burglary charges, and he was allowed to plead guilty to two of the charges.

The court noted that the present offenses occurred as police officers were attempting to arrest Gibson on active warrants. The trial court noted the sentencing range for aggravated battery is up to 10 years at hard labor and a fine of up to $5,000.00, as found in La. R.S. 14:34. The trial court then stated that the sentencing range for aggravated flight from an officer turns on which provision of La. R.S. 14:108.1 applied. The trial court stated that aggravated flight from an officer carries a sentencing range of not more

than five years with a fine of not more than $2,000.00. The trial court then noted that the sentencing range for whoever commits aggravated flight from an officer that results in serious bodily injury is not more than 10 years at hard labor and up to a $2,000.00 fine.

According to the trial court, Gibson's behavior created a substantial risk of death in running over someone with a car, as defined in La. R.S. 14:108.1(E)(2)(b). The trial court stated that there is a substantial risk of death, "when you run somebody over with your car, but I think clearly the section of extreme physical pain applies as someone who gets run over by a car with his foot and then being drug is going to endure extreme physical pain." The court observed that Officer Dowdy's foot was not broken. The court stated that Gibson knowingly created the risk of death or great bodily harm to more than one person with his actions.

The court found a likelihood that, during a period of a suspended sentence, Gibson would commit another crime, and that he is in need of correctional treatment or a custodial environment best provided by commitment to an institution. The court determined that a lesser sentence would deprecate the seriousness of his offenses and that Gibson committed the offenses in order to facilitate or conceal the commission of other offenses. The court did not find any mitigating factors in this case, and stated that Gibson has not had a break from incarceration, because he continues to commit crimes. The trial court noted that Gibson received a "tremendous benefit" from being allowed to plead guilty without being billed as a habitual offender and by having his other charges dismissed.

For the offense of aggravated battery, the court sentenced Gibson to ten years at hard labor. For the offense of aggravated flight from an officer,

5

the court also sentenced Gibson to serve ten years at hard labor. The trial court ordered that his sentences be served concurrently with each other, but consecutively to any other sentence Gibson might be serving. Gibson was given credit for time served. Gibson was properly informed of the time delays to apply for post-conviction relief.

Gibson filed a motion to reconsider sentence on April 26, 2021, arguing his sentences are excessive and the trial court failed to consider any mitigating factors. The motion was denied by the trial court the same day.

### Discussion

Gibson now appeals, claiming that his sentences are excessive and that the trial court failed to consider several mitigating factors. He argues that he was not trying to hurt anyone, but fled because he was afraid when he saw a man coming to his car with a gun drawn, because someone had just been killed at a nearby cemetery. He argues that the trial court incorrectly sentenced him under the provisions of La. R.S. 14:108.1(E)(2)(a), requiring serious bodily injury.[1] The only injury was to Officer Dowdy, whose foot was not broken. He was treated and released the same day. According to Gibson, Officer Dowdy did not suffer a lack of consciousness, extreme physical pain, or protracted or obvious disfigurement. There was no protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

Gibson argues that the victims expressed no opinion on the severity of the punishment, his conduct was the result of circumstances unlikely to

---

[1] Gibson erroneously cited La. R.S. 14:108(E)(1)(a). There is no such provision.

6

recur, he was remorseful, and incarceration would entail a hardship on his two children.

The state argues that the sentences are not excessive. Gibson has numerous prior convictions, he obtained a significant reduction in sentencing exposure by pleading guilty and avoiding prosecution as a habitual offender, other pending felony charges were dismissed, and he benefited from receiving concurrent sentences.

Appellate review of sentences for excessiveness is a two-prong inquiry. Under the first prong, the record must show that the trial court considered the factors in La. C. Cr. P. art. 894.1. The primary goal of La. C. Cr. P. art. 894.1 is for the court to articulate the factual basis for the sentence imposed, and not simply mechanical compliance with its provisions. However, if the record reflects that the trial judge adequately considered the guidelines of the article, then he is not required to list every aggravating or mitigating circumstance. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270; *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Sandifer, supra*; *State v. DeBerry*, *supra*. In sentencing, the important elements which should be considered are the defendant's personal history (age, familial ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones,* 398 So. 2d 1049 (La. 1981); *State v.*

7

*Sandifer, supra*; *State v. DeBerry, supra.* There is no requirement that specific matters be given any particular weight during sentencing. *State v. Sandifer, supra*; *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Next, under the second prong of the analysis, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Sandifer, supra.* A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Sandifer, supra.*

Moreover, when determining whether a defendant's sentence is excessive, a reviewing court should compare the defendant's punishment with the sentences imposed for similar crimes by the same court or other courts. *State v. Sandifer, supra*; *State v. Johnston*, 50,706 (La. App. 2 Cir. 6/22/16), 198 So. 3d 151, *writ granted on other grounds*, 16-1460 (La. 6/5/17), 221 So. 3d 46.

A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. Zeigler*, 54,217, (La. App. 2 Cir. 3/9/22), 334 So. 3d 1081. Absent a showing of manifest abuse of such discretion, a sentence will not be set

aside as excessive. Upon review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Weaver*, *supra*; *State v. Sandifer, supra*.

As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Ward*, 53,969 (La. App. 2 Cir. 6/30/21), 324 So. 3d 231.

A defendant's receipt of a substantial advantage via plea bargain is an appropriate consideration in sentencing. Accordingly, where the defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in sentencing exposure through a plea bargain, the trial court has great discretion in imposing even the maximum sentence for the pled offense. *Id.*; *State v. Washington*, 52,518 (La. App. 2 Cir. 2/27/19), 266 So. 3d 430, *writ denied*, 19-00776 (La. 10/21/19), 280 So. 3d 1174.

The sentence for aggravated battery is set forth in La. R.S. 14:34, which provides:

> Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.

The sentence for aggravated flight from an officer that results in serious bodily injury is set forth in La. R.S. 14:108.1(E)(2)(a), which provides:

> Whoever commits the crime of aggravated flight from an officer that results in serious bodily injury shall be imprisoned at hard labor for not more than ten years and may be fined not more than two thousand dollars.

On the date of Gibson's offense, May 31, 2019, La. R.S. 14:108.1(E)(2)(b) defined "serious bodily injury" as:

> [B]odily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

In *State v. Wise*, 93-0105 (La. App. 4 Cir. 9/29/94), 644 So. 2d 230, *writ granted in part on other grounds*, 94-2993 (La. 12/6/96), 684 So. 2d 408, the Fourth Circuit found that the defendant's maximum sentence of ten years at hard labor for aggravated battery was not excessive where he stole a truck and deliberately tried to run over an officer while fleeing from police.

In *State v. Scoggins*, 49,194 (La. App. 2 Cir. 8/13/14), 147 So. 3d 276, this Court determined that the trial court did not abuse its discretion by imposing the maximum sentence of two years for aggravated flight from an officer. In perpetrating his crimes, Scoggins reached speeds of 110 m.p.h. on his motorcycle during the police chase, passed vehicles in no-passing zones, and ran red lights to avoid the officers chasing him. This Court found that Scoggins placed the public and the arresting officer in harm's way during his attempted escape from the police. This Court concluded that Scoggins' sentence for aggravated flight was neither grossly disproportionate to the severity of the crime he committed, nor did it shock the sense of justice or serve no purpose other than to inflict pain and suffering.

The trial court here assessed the sentencing factors from La. C. Cr. P. art. 894.1 and Gibson's PSI report, providing his age, familial ties, marital status, health, and employment record. Gibson's PSI further reveals that the driver of the vehicle that Gibson hit when fleeing had no opinion concerning

his sentencing, and that Officer Dowdy stated about Gibson's potential sentence, "At first I thought they should hammer him, but now I don't have an opinion about what his sentence should be. I just thank God it didn't break my foot." Though Officer Dowdy was able to return to work the same day that he was examined at the hospital and his foot was not broken, Gibson's driving over his foot in his attempt to flee, put the officer in extreme pain. Furthermore, Officer Dowdy was dragged by Gibson's car, placing the officer in a position where there was a substantial risk of death.

Gibson's criminal history merits emphasis. He has numerous felony convictions spanning nearly 20 years, including simple burglary of an inhabited dwelling, unauthorized entry of a place of business, possession of a firearm by a convicted felon, and several convictions for simple burglary. As the trial court pointed out, the instant offenses represent Gibson's sixth felony, for which the state could have billed him as a habitual offender. Gibson avoided significant sentencing exposure by the state agreeing not to bill him as a habitual offender and dismissing his four other charges, and by the trial court ordering his sentences to run concurrently. Furthermore, it was within the trial court's discretion to sentence him to the maximum sentence on both counts. Gibson placed Officer Dowdy and members of the public at risk of great bodily harm in fleeing law enforcement as he did. The sentences imposed are not out of proportion to the offenses given his criminal history and the nature of the instant offenses. The trial court did not abuse its discretion here, and Gibson's sentences do not shock the sense of justice and are not constitutionally excessive.[2]

_____

[2] We believe it is appropriate to note that our review of the record reveals a deficiency in the trial court's advice to defendant during the guilty plea and a discrepancy

11

## CONCLUSION

For the reasons stated above, the convictions and sentences of Robert O'Neal Gibson are affirmed.

**AFFIRMED**.

---

between the trial court's sentence and the plea agreement. First, the trial court failed to advise defendant of the correct sentencing range for aggravated flight from an officer which results in serious bodily injury, as required by La. C. Cr. P. art. 556.1. The trial court advised defendant that the sentence for aggravated flight is not more than five years at hard labor, when the sentence for aggravated flight from an officer which results in serious bodily injury in not more than 10 years at hard labor. Furthermore, Gibson signed a document titled, "Waiver of Constitutional Rights and Guilty Plea," which likewise states that the sentence for aggravated flight from an officer is "not more than five years at hard labor."

Second, Gibson's plea agreement, contained within the "Waiver of Constitutional Rights and Guilty Plea" form, states that his sentences will be "concurrent with each other and any other matter(s), including probation and parole matters." But, the trial court ordered Gibson's sentences to run concurrently to each other and consecutive to any other sentence he may be serving.

Since, however, these deficiencies were not assigned as errors on appeal, they may not be considered by this Court. See *State v. Guzman,* 99-1528, 99-1753 (La. 5/16/00), 769 So. 2d 1158 (holding that violations of La. C. Cr. P. art. 556.1 are not subject to error patent review and, therefore, must be assigned as error on appeal; if no such assignment is made, the appropriate remedy is through post-conviction relief proceedings); see also *State v. Kennon*, 33,760 (La. App. 2 Cir. 9/27/00), 769 So. 2d 159.