Judgment rendered June 5, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,700-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JARVARIUS J. HOLDEN                         Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 2233032

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT                 Counsel for Appellant
By: Chad Ikerd

CHARLES BLAYLOCK ADAMS                       Counsel for Appellee
District Attorney

EDWIN L. BLEWER, III
ETHAN ARBUCKLE
Assistant District Attorneys

* * * * *

Before COX, STEPHENS, and ROBINSON, JJ.

**ROBINSON, J.**

Jarvarius Holden ("Holden") entered a guilty plea for the charge of one count of possession with intent to distribute schedule II CDS – fentanyl, which carries a sentencing range of imprisonment at hard labor for not less than 5 years and not more than 40 years, plus a fine of no more than $50,000. He was sentenced to 40 years at hard labor, with 10 years suspended, and 3 years' supervised probation, with credit for time served. Holden's motion for reconsideration of the sentence was denied without a hearing, and he timely filed a motion for appeal.

For the reasons set forth below, we AFFIRM the sentence.

## FACTS AND PROCEDURAL HISTORY

On October 9, 2022, Holden was arrested following a traffic stop in which drugs were found inside the vehicle following a consent search. There was a strong odor of marijuana and a large clear plastic bag containing a small amount of a green leafy substance inside in plain view on the front passenger seat. Holden voluntarily turned over an altered bottle of blue pills he retrieved from the middle console. He was *Mirandized* and arrested, and a search of his vehicle was conducted. The searching officer found several individual clear bags of what was later determined to be marijuana, a small clear bag of a white powder substance that was identified by Holden to be cocaine, three clear plastic bags containing blue pills later identified as oxycodone, an altered prescription bottle containing Promethazine, a clear plastic bag containing over $15,000 in cash, and a digital scale.

There were over 728 of the blue pills with the letters "M30" printed on them. Police believed the pills to be oxycodone after using a drug database to look up what the pills were. However, after the crime lab later

ran tests on the pills, it was determined that some included ANPP and fentanyl. The testing sample of 10 units indicated that 39.1% of the suspected oxycodone pills contained fentanyl. Holden denied knowing whether the fentanyl in question in this case was in fact fentanyl when he possessed it.

Holden was released on bond at his 72-hour hearing. He was charged by bill of information on November 15, 2022, with one count of possession with intent to distribute schedule I CDS – marijuana, less than 2½ pounds; one count of possession with intent to distribute schedule II CDS – oxycodone, more than 28 grams; and possession of schedule II CDS – cocaine, two grams or more, but less than 28 grams. Holden was arraigned and entered a plea of not guilty on November 30, 2022.

The State filed an amended bill of information on February 3, 2023, to amend the oxycodone count to allege the drug was fentanyl and 4-ANPP. After Holden failed to appear at his February 6, status conference, a bench warrant was issued for his arrest. On February 14, he was arrested for a bench warrant after a traffic stop. In February, an investigation took place in Sabine Parish regarding Holden's suspected drug operations and he was charged with various drug charges. He was also charged with domestic battery of a juvenile. Those charges are currently pending.

Holden entered a guilty plea on March 13, 2023, for the charge of one count of possession with intent to distribute schedule II CDS – fentanyl, which carries a sentencing range of imprisonment at hard labor for not less than 5 years and not more than 40 years, plus a fine of no more than $50,000. The charges of possession with intent to distribute a schedule I CDS and possession of a schedule II CDS two grams or more, but less than

2

28 grams – cocaine, were dismissed as part of the plea agreement. A PSI was ordered.

The State introduced medical testimony as to the dangers of fentanyl, its comparison to other drugs, and the significant increase in fentanyl overdoses and deaths. There was also testimony regarding the pending charges in Sabine Parish, confirming that multiple forms of narcotics had been seized during the course of that investigation. Holden and his family testified on his behalf at his sentencing hearing. His two-year-old son's mother, as well as his sister, testified that he was financially supporting his son and tried to see him nearly every day. Holden testified that he was gainfully employed prior to his incarceration and that he always held a job and tried to work 40 hours a week or more. He also claimed to have no knowledge that the drugs he possessed contained fentanyl.

After several sentencing hearings were rescheduled to correct information in the PSI, Holden was sentenced to 40 years at hard labor, with 10 years suspended, and 3 years' probation, with credit for time served.[1] Holden orally objected to the sentence as excessive, then filed a written motion to reconsider the sentence, alleging that the court did not give proper weight and consideration to certain mitigating factors, which was denied without a hearing. Holden timely appealed the trial court's sentence.

## DISCUSSION

Holden argues that even though the trial court suspended the final 10 years of his sentence of 40 years at hard labor and allowed for 3 years' probation, the sentence nonetheless shocks the conscience and did not take

---

[1] The minute entry from the June 14, 2023, sentencing hearing incorrectly showed the sentence as "TEN (40) Years, with TEN (10) Years suspended," which is presumed to be a typographical error since all other sentencing references in the record are correct.

into consideration the mitigating factors of his case. He claims that the facts of this case do not make him the "worst of the worst" fentanyl drug dealer, and should not have received a near-maximum sentence.

Appellate courts employ a two prong test when reviewing an excessive sentence claim: (1) the trial record must demonstrate that the trial court complied with the guidelines in La. C. Cr. P. art. 894.1 (list of sentencing factors); and (2) the appellate court must determine if the sentence is constitutionally excessive. *State v. Ladd*, 14-1611 (La. 3/27/15), 164 So. 3d 184 (*per curiam*).

Articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Duncan*, 53,194 (La. App. 2 Cir. 1/15/20), 290 So. 3d 251. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. Important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that specific matters be given particular weight at sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a

purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307; *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. DeBerry*, *supra*; *State v. Modisette*, 50,846 (La. App. 2 Cir. 9/28/16), 207 So. 3d 1108. As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), 356 So. 3d 1053.

Trial courts have wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116; *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*.

In its sentencing, the trial court specifically referenced the applicable aggravating factors pursuant to La. C. Cr. P. 894.1. It determined that there was an undue risk that Holden would commit another crime during a period of a suspended sentence or probation and that a lesser sentence would deprecate the seriousness of the crime. It further noted that Holden created a risk of death or great bodily harm to more than one person through the intended distribution and handling of deadly fentanyl. The Court stated that

5

Holden received a substantial benefit from his guilty plea, as he was originally charged with multiple felony counts. It did not specifically reference any mitigating factors considered.

Holden's sentence is well supported by the record and the trial court adequately considered the aggravating and mitigating factors. The only disputed fact in the case was whether Holden knew that some of the drugs he was selling contained fentanyl. This is hardly a defense to the charge, or even a mitigating factor, when there is significant evidence of other multiple drug transactions, including those involving fentanyl – especially when compared to the extensive risks and dangers of fentanyl use.

Holden's 40-year sentence, with 10 years suspended, for conviction of one count of possession with intent to distribute schedule II CDS (fentanyl), was well within the sentencing range – imprisonment at hard labor for not less than 5 years and not more than 40 years, plus a fine of no more than $50,000. Holden significantly reduced his sentencing exposure by pleading guilty and the 10-year suspension of sentence resulted in an overall sentence that would not be considered "near maximum."

The trial court's imposition of the sentence was not shocking to the sense of justice or a needless infliction of pain and suffering, and was not an abuse of its discretion. Accordingly, we find that Holden's sentence of 40 years at hard labor, with 10 years suspended, and 3 years' supervised probation, with credit for time served, is affirmed.

## CONCLUSION

For the reasons stated hereinabove, Holden's sentence is hereby AFFIRMED.